**In re Tim PHALEN and Lorie Buxton, Debtors.**

**Susan L. Rhiel, Plaintiff,**

v.

**The Huntington National Bank, Defendant.**

**Bankruptcy No. 09–62256.
Adversary No. 09–2572.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 4, 2011.

Susan L. Rhiel, Columbus, OH, for Plaintiff.

Amelia A. Bower, Columbus, OH, for Defendant.

### MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

#### I. Introduction

Before they commenced their case under Chapter 7 of the Bankruptcy Code, Tim Phalen and Lorie Buxton (collectively with Phalen, "Debtors") granted The Huntington National Bank ("Huntington") a mortgage on their real property located at 45 South Chesterfield Road, Columbus, Ohio 43209 ("Property"). The certificate of acknowledgment on the mortgage ("Certificate of Acknowledgment") identified Buxton, but not Phalen, as having acknowledged the signing of the mortgage. Contending that the mortgage encumbering Phalen's one-half interest in the Property ("Phalen's Mortgage") is therefore defectively executed and that her status as a hypothetical bona fide purchaser gives her a superior interest in the Property, the

Chapter 7 trustee, Susan L. Rhiel ("Trustee"), seeks to avoid Phalen's Mortgage under 11 U.S.C. § 544(a)(3) and preserve it for the benefit of Phalen's bankruptcy estate under § 551. The Trustee also seeks additional relief discussed in more detail below. In response, Huntington argues that Phalen's Mortgage was not defectively executed and that, even if it were, the Trustee would not be entitled to avoid Phalen's Mortgage because she had constructive notice of it despite any defective execution.

The Court concludes that: (1) Phalen's Mortgage is defectively executed because the notary public failed to certify any acknowledgment that Phalen made of his signature; and (2) the Trustee did not have constructive notice of Phalen's Mortgage and, therefore, has the status of a bona fide purchaser of the Property from Phalen. Accordingly, the Court grants summary judgment in favor of the Trustee on her causes of action that seek avoidance of Phalen's Mortgage under § 544(a)(3) and preservation of that mortgage for the benefit of Phalen's estate under § 551. For the reasons stated below, however, the Court declines to grant summary judgment in favor of the Trustee on her remaining requests for relief.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. The adversary proceeding is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(F) and (K).

## III. Procedural and Factual Background

By the complaint commencing this adversary proceeding ("Complaint") (Doc. 1), the Trustee seeks a declaratory judgment that Phalen's one-half interest in the Property is unencumbered because the Certificate of Acknowledgment fails to satisfy the requirements of Ohio Revised Code § 5301.01(A) and the requirements of Ohio's version of the Uniform Recognition of Acknowledgments Act, Ohio Revised Code §§ 147.51 through 147.58 ("URAA") (Count One). Based on those sections of the Ohio Revised Code as well as § 5301.25, she also seeks to: (a) avoid Phalen's Mortgage pursuant to 11 U.S.C. §§ 544(a)(3) and 547(b) (Count Two and Count Three, respectively); (b) preserve Phalen's Mortgage for the benefit of Phalen's bankruptcy estate under § 551 (Count Four); and (c) recover the Property transferred or its value from Huntington under § 550 (Count Five). After Huntington filed its answer ("Answer") (Doc. 4), the Trustee filed her motion for summary judgment on all counts of the Complaint ("Motion") (Doc. 9). This matter is now before the Court on (1) the Motion; (2) Huntington's brief in opposition ("Opp'n Br.") (Doc. 10); (3) the Trustee's reply to Huntington's opposition brief ("Reply") (Doc. 13); and (4) the Trustee's notice of supplemental authority (Doc. 14) and notice of additional supplemental authority (Doc. 15).

The parties did not file a stipulation of facts, but the pleadings and the documents filed in the Debtors' bankruptcy case establish the undisputed material facts set forth below.

On October 22, 2009 ("Petition Date"), the Debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code. On both the date that they granted the mortgage and on the Petition Date, the Debtors owned the Property in fee simple by way of a general warranty deed signed on December 3, 2008 and recorded on December 5, 2008 in the Franklin County, Ohio Recorder's Office ("Recorder"). *See* Compl., Ex. A. Prior to the Petition Date, on or about December 3, 2008, the Debtors executed a "Short Form Mortgage," there-

by granting Huntington a lien on the Property. The Short Form Mortgage was recorded on December 5, 2008. *See* Compl., Ex. B. The Short Form Mortgage incorporates by reference certain provisions of a master mortgage ("Master Mortgage"). The Master Mortgage does not reference the Short Form Mortgage; indeed, the Master Mortgage was recorded on January 3, 2008—nearly a year before Phalen and Buxton executed the Short Form Mortgage.

Because Buxton and Phalen executed the Short Form Mortgage—as opposed to the more common form of mortgage in which the signature of each borrower typically appears at the end of a 15–to–20–page document—their signatures as borrowers appear on page 3 of the document, the same page on which the following Certificate of Acknowledgment appears:

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including those provisions of the Master Mortgage Form that are incorporated by reference) and in any Rider executed by Borrower and recorded with it.
>
> Executed this 3rd day of December, 2008.
>
> *Lorie* *Bux-*
> *ton* (Seal)
> Lorie Buxton -Borrower
> *Timothy F. Phalen* (Seal)
> Timothy F. Phalen -Borrower
> _____[**Space Below This Line For Acknowledgment**]_____
>
> **STATE OF OHIO, Franklin County** ss:
>
> The foregoing instrument was acknowledged before me this 3rd day of December, 2008 by Lorie Buxton.
>
> My commission expires:
>
> *Karen J. Garvin*
> Notary Public State of Ohio

The italicized text reproduced above represents each individual's actual signature. The Certificate of Acknowledgment, which begins after the words "Space Below This Line For Acknowledgment" includes an additional item—the notarial seal of Karen J. Garvin—that is not reproduced above. The Certificate of Acknowledgment clearly does *not* contain the name of, or any other reference to, Phalen. *See id.*

## IV. Arguments of the Parties

Because the Certificate of Acknowledgment does not contain the name of or otherwise identify Phalen, the Trustee contends that Phalen's Mortgage was not executed in accordance with the requirements of § 5301.01(A) or the requirements of the URAA, was not properly recorded and, pursuant to Ohio Revised Code § 5301.25(A), did not provide constructive notice to the Trustee as a hypothetical bona fide purchaser under § 544(a)(3). As Chapter 7 trustees regularly do when alleging that mortgages are unperfected, the Trustee moves for summary judgment on the claims for relief asserted in the Complaint that seek (1) avoidance of Phalen's Mortgage under 11 U.S.C. § 544(a)(3) (Count Two) and (2) preservation of Phalen's Mortgage for the benefit of Phalen's estate under § 551 (Count Four). Here, however, the Trustee also moves for summary judgment on her claims for relief seeking: (1) a declaration that Phalen's one-half interest in the Property is unencumbered (Count One); (2) avoidance of Phalen's Mortgage as a preferential transfer under § 547(b) (Count Three); and (3) recovery of the Property transferred or its value from Huntington under § 550 (Count Five). In support of her preferential-transfer claim, the Trustee contends that Huntington's failure to perfect Phalen's Mortgage—due to its defective execution—means that Phalen's transfer of his interest in the Property to Huntington did

not occur until immediately prior to the Petition Date, so that the transfer occurred within the preference period. And, according to the Trustee, all the remaining elements of § 547 are satisfied. In the Motion, the Trustee fails to articulate the legal basis for the relief she seeks in Count One (a declaration that Phalen's one-half interest in the Property is unencumbered) or Count Five (recovery under § 550) of the Complaint.

Huntington does not address the Trustee's request for avoidance under § 547(b) or the relief she seeks under §§ 550 and 551. Nor does Huntington discuss the Trustee's request for a declaratory judgment that Phalen's one-half interest in the Property is unencumbered. Rather, Huntington limits its response to opposing the Trustee's attempt to avoid Phalen's Mortgage based on the alleged defect in the Certificate of Acknowledgment and in that regard asserts five arguments. Three of Huntington's arguments are an attempt to persuade the Court that Phalen's Mortgage is not defectively executed at all. In support of this position, Huntington contends that the Certificate of Acknowledgment is sufficient with respect to Phalen because it: (1) includes a phrase ("acknowledged before me") that is defined in the URAA so as to effectively identify Phalen; (2) appears on the same page as Phalen's signature as "Borrower";

and (3) substantially complies with Ohio law. Huntington's other two arguments are to the effect that, even if Phalen's Mortgage were defectively executed, such defective execution does not matter. In this regard, Huntington first asserts that Ohio Revised Code § 5301.25(A)—which makes defectively executed instruments for the conveyance or encumbrance of real estate ineffective against subsequent bona fide purchasers—does not apply to mortgages. Huntington also argues that defective execution of Phalen's Mortgage is of no import because the Trustee had constructive notice of Phalen's Mortgage by virtue of the filing of the Master Mortgage and that, as a result of this constructive notice, the Trustee could not have been a bona fide purchaser for purposes of § 544(a)(3). In the Reply, the Trustee maintains that Phalen's Mortgage is defectively executed and that she did not have constructive notice of it.

## V. Legal Analysis

### A. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56 ("Civil Rule 56"), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[1] "On a mo-

---

**1.** Pursuant to an amendment to Civil Rule 56 that became effective on December 1, 2010 (after this adversary proceeding was commenced), the summary judgment standard now appears in Civil Rule 56(a) rather than, as it formerly did, Civil Rule 56(c). See Fed. R.Civ.P. 56(a) advisory committee's note (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). The Court is citing the amended rule given that application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice, because the amendments do not change the

summary judgment standard or burdens." *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, No. 09–2524, 2011 WL 183969, at *9 n. 4 (1st Cir. Jan.21, 2011); *see also Martinez v. Hutton (In re Harwell),* 628 F.3d 1312, 1317 n. 4 (11th Cir.2010) ("Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice. Fed.R.Civ.P. 86(a). We apply the language of [Civil] Rule 56 as amended.").

tion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano,* —— U.S. ——, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). "A dispute is genuine only if based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir. 2009). And a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

The only counts on which the Court is granting summary judgment are Count Two (seeking avoidance of Phalen's Mortgage) and Count Four (seeking preservation of the avoided lien under § 551). The only facts that are material to those counts are the facts set forth above regarding the contents of the Certificate of Acknowledgment (which go to whether the Certificate of Acknowledgment satisfied the requirements of Ohio law and whether the Mortgage is defectively executed) and the fact that the Master Mortgage was recorded prior to the recording of the Short Form Mortgage and therefore did not reference the Short Form Mortgage (which goes to whether the Trustee had constructive notice of Phalen's Mortgage). There is no genuine dispute as to those facts. Accordingly, Count Two and Count Four of the Complaint are ripe for summary judgment.

**B. The Trustee's Request for a Declaratory Judgment That the Property Is Unencumbered by Phalen's Mortgage Is Moot.**

■ In Count One the Trustee seeks a declaratory judgment that Phalen's one-half interest in the Property is unencumbered by Phalen's Mortgage "on the basis that the [Certificate of Acknowledgment] fails to certify Phalen's signature[.]" Mo-

tion at 2. By an order entered on January 28, 2010, the Trustee received authority to sell the Property, including Phalen's one-half interest, "free and clear of all known lienholders, including Huntington, with the interests of the parties, if any, transferring to the net proceeds of sale, after payment of costs of sale, to be held by the Trustee, pending further Order of the Court or agreement of the parties." Doc. 58 in Case No. 09–62256. On April 9, 2010, the Trustee filed a Report of Private Sale (Doc. 105 in Case No. 09–62256) in which she represented that, on March 25, 2010, she had sold the Property. Pursuant to the sale order, the sale was free and clear of Phalen's Mortgage, which has attached to certain proceeds of the sale of the Property being held by the Trustee. Thus, a declaratory judgment that Phalen's one-half interest in the Property is unencumbered by Phalen's Mortgage would be of no practical significance given that certain cash proceeds of the Property, rather than the Property itself, are now encumbered by Phalen's Mortgage. The Court, therefore, denies summary judgment in favor of the Trustee as to Count One of the Complaint on the basis of mootness. *See Finstad v. Florida, Dep't of Bus. & Prof'l Regulation,* 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues would have no practical significance.").

**C. The Trustee's Status as a Bona Fide Purchaser Under the Bankruptcy Code and the Rights of Bona Fide Purchasers Under Ohio Law.**

■ The Trustee's causes of action to avoid Phalen's Mortgage and preserve that mortgage for the benefit of Phalen's estate continue to have practical significance, however, because the outcome of those causes of action will affect the amount of the proceeds of the sale of the Property, if

any, to which Huntington is entitled. The Trustee contends that Phalen's Mortgage was unperfected as of the Petition Date and thus is avoidable under the "strong-arm" powers—including the powers of a bona fide purchaser of real property from Phalen—granted to her by § 544(a)(3), which states:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—... (3) *a bona fide purchaser of real property, other than fixtures, from the debtor,* against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added). The Court must look to applicable state law—here, the law of Ohio—to determine whether the Trustee is a bona fide purchaser of real property from Phalen and, if so, whether Phalen's Mortgage is valid against the Trustee in her role as such a bona fide purchaser. *See Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1031–32 (6th Cir.2001) ("Whether the Trustee can be treated as ... a bona fide purchaser of real estate for the purpose of exercising strong arm power under section 544(a) is determined under applicable state law as of the time the bankruptcy is commenced."); *Kildow v. EMC Mortg. Corp. (In re Kildow),* 232 B.R. 686, 693 (Bankr.S.D.Ohio 1999) ("When analyzing the validity, priority, or extent of interests in property, state law controls." (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979))).

Ohio Revised Code § 5301.25(A) provides as follows:

> All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the [Ohio] Revised Code, and instruments of writing *properly executed* for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the [Ohio] Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. *Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser* having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

Ohio Rev.Code Ann. § 5301.25(A) (emphasis added). Although § 5301.25(A) does not refer to notice, constructive or otherwise, but only to "knowledge of the existence of that former deed, land contract, or instrument[,]" *id.,* the Ohio Supreme Court has made clear that constructive notice derived from the recording of a properly-executed document is sufficient to prevent a subsequent purchaser from becoming a bona fide purchaser. *See Emrick v. Multicon Builders, Inc.,* 57 Ohio St.3d 107, 566 N.E.2d 1189, 1193 (1991). But an improperly executed mortgage "is not entitled to record, and even if it is recorded, the defective mortgage is treated as though it has not been recorded." *Mortg. Elec. Registration Sys. v. Odita,* 159 Ohio App.3d 1, 822 N.E.2d 821, 825 (2004). Accordingly, the filing of "an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice." *Zaptocky,* 250 F.3d at 1028. *See also Logan v. Universal Credit 1 Union, Inc. (In re Bozman),* 365 B.R. 824, 829–30 (Bankr. S.D.Ohio 2007) (holding that an improperly executed mortgage did not put trustee as bona fide purchaser on constructive no-

tice), *aff'd,* 2007 WL 4246279 (S.D.Ohio Nov.28, 2007). Thus, "[o]nly properly executed mortgages take priority over a bona fide purchaser...." *Kovacs v. First Union Home Equity Bank (In re Huffman),* 408 F.3d 290, 293 (6th Cir.2005); *see also Helbling v. Mortg. Elec. Registration Sys., Inc. (In re Cala),* No. 07–1272, 2008 WL 2001761, at *3 (Bankr.N.D.Ohio May 6, 2008) ("Ohio law provides that 'an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice.'" (quoting *Zaptocky,* 250 F.3d at 1028)); *In re Nowak,* 104 Ohio St.3d 466, 820 N.E.2d 335, 338 (2004) ("Since only properly executed mortgages were entitled to be recorded, a mortgage [that was improperly executed], even though recorded, could not serve as constructive notice to a subsequent bona fide purchaser."). If Phalen's Mortgage is improperly executed, therefore, it was not entitled to be recorded, and its recording would not have provided constructive notice to a subsequent bona fide purchaser such as the Trustee.

■ As discussed below, the Trustee has established that Phalen's Mortgage is improperly executed, not entitled to be recorded and therefore ineffective to provide constructive notice to a subsequent bona fide purchaser. In addition, the Trustee had no constructive notice of Phalen's Mortgage by any other means. The Trustee is accordingly entitled to avoid Phalen's Mortgage as a bona fide purchaser under § 544(a)(3). The Trustee also seeks to preserve the avoided transfer for the benefit of Phalen's bankruptcy estate pursuant to § 551, which provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. This relief is appropriate here. Avoidance of Phalen's Mortgage does not eliminate

Phalen's Mortgage, but instead preserves it for the benefit of Phalen's estate under § 551.

## D. Phalen's Mortgage Is Improperly Executed.

### 1. Ohio Law Imposes Four Requirements, Including Certification, for the Proper Execution of a Mortgage.

■ Section 5301.01(A) of the Ohio Revised Code, which establishes four requirements for the proper execution of a mortgage under Ohio law, provides in relevant part as follows:

> A deed, mortgage, land contract ... or lease of any interest in real property and a memorandum of trust ... shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe the official's name to the certificate of acknowledgment.

Ohio Rev.Code Ann. § 5301.01(A) (West 2011). Under this provision, a mortgage executed before a notary public is properly executed only if: (1) the mortgagor signs the mortgage; (2) the mortgagor acknowledges his or her signature before the notary public; (3) the notary public certifies the acknowledgment; and (4) the notary public subscribes his or her name to the certificate of acknowledgment. *See Drown v. GreenPoint Mortg. Funding, Inc. (In re Leahy),* 376 B.R. 826, 832 (Bankr.S.D.Ohio 2007). Here, the documents demonstrate that Phalen signed the Short Form Mort-

gage and that Karen J. Garvin subscribed her name as a notary public to the Certificate of Acknowledgment; there is no dispute, therefore, that Phalen's Mortgage and the Certificate of Acknowledgment satisfy the first (signature by mortgagor) and fourth (signature by the notary public) requirements, respectively, set forth in § 5301.01(A). There is a dispute, however, as to whether the Certificate of Acknowledgment satisfies the second and third requirements of § 5301.01(A) have been satisfied. As to the second requirement (that Phalen acknowledged his signature before the notary public), Phalen's having signed the Short Form Mortgage in the presence of the notary public likely would have satisfied this requirement, *see Wayne Bldg. & Loan Co. v. Hoover*, 12 Ohio St.2d 62, 231 N.E.2d 873, 874 (syllabus ¶ 1) (Ohio 1967) ("In the absence of evidence to the contrary, one who signs his name to a document in the presence of another thereby acknowledges his signing thereof to such other."), as would Phalen's having acknowledged the signature to the notary public as his. But the Trustee does not concede that either event occurred, and the Certificate of Acknowledgment itself does not demonstrate compliance with the acknowledgment requirement.[2] Thus, if the question of whether Phalen acknowledged his signature were the only dispositive issue, it would have to be adjudicated at trial rather than on motion for summary judgment.

As explained below, however, there is another basis for summary judgment here. In addition to questioning whether

Phalen acknowledged his signature, the Trustee also contends that, because the Certificate of Acknowledgment did not name Phalen or otherwise identify him as having acknowledged his signature, the notary public failed to *certify* any acknowledgment that Phalen made. Indeed, even if Phalen in fact acknowledged his signature before the notary public, Phalen's Mortgage would be defectively executed if the notary public failed to certify that acknowledgment. *See Leahy*, 376 B.R. at 832 ("[T]he analysis does not end when a mortgage complies with the first, second and fourth requirements of § 5301.01(A); the notary must still certify the acknowledgment."); *Geygan v. Chase Manhattan Mortg. Corp. (In re Thomas)*, No. 06–1320, 2008 Bankr.LEXIS 1679, at *15 (Bankr. S.D.Ohio May 29, 2008) ("Acknowledgment and certification are two separate requirements under § 5301.01."); *Cala*, 2008 WL 2001761, at *6 ("[Section 5301.01] and the Ohio Supreme Court case law interpreting it require two separate acts—(1) the mortgagor signing the document in the presence of a notary or telling the notary that the signature is indeed his; and (2) the notary certifying that acknowledgment— and fulfilling one act alone is not sufficient."). Thus, assuming for the sake of this decision that Phalen acknowledged his signature before the notary public, the dispositive issue before the Court with respect to the question of whether Phalen's Mortgage is defectively executed is as follows: Did the notary public, by including only Buxton's name in the Certificate of Acknowledgment, properly certify Phalen's

---

**2.** *Cf. Hardesty v. Citifinancial, Inc. (In re Roberts)*, 402 B.R. 808, 813 (Bankr.S.D.Ohio 2009) ("The Court also concludes that the Roberts satisfied the requirement that they acknowledge their signatures before the notary public. Under Ohio law, in the absence of evidence to the contrary, one who signs his name to a document in the presence of another thereby acknowledges his signing thereof

to such other. The Acknowledgment expressly states that the Roberts *executed* the Mortgage *before me*." (citation and internal quotation marks omitted)), *aff'd*, 419 B.R. 20 (6th Cir. BAP 2009), *aff'd*, No. 09–4448, 2011 WL 693235 (6th Cir. Mar. 1, 2011). In *Roberts*, the certificate of acknowledgment identified both mortgagors by name. *See Roberts*, 402 B.R. at 810.

acknowledgment? If the notary public failed to certify Phalen's acknowledgment, then the third requirement of Ohio Revised Code § 5301.01(A) is not met, and this in and of itself causes Phalen's Mortgage to be defectively executed. As explained at some length below, an extensive body of case law and several statutory provisions are relevant to the certification issue, and all of the relevant authorities lead to the same conclusion—the notary public failed to certify Phalen's acknowledgment.

### 2. To Satisfy the Requirement of Certification, the Notary Public Must Identify the Person Who Is Acknowledging the Signature on the Mortgage.

The starting point in Ohio for assessing the validity of a certificate of acknowledgment that fails to identify the mortgagor—commonly known as a "blank acknowledgment"—is *Smith's Lessee v. Hunt*, 13 Ohio 260 (1844).[3] The Ohio Supreme Court held in *Smith's Lessee* that a public official who purportedly certified a mortgagor's acknowledgment of his signature did not in fact certify the acknowledgment given that the public official failed to fill in a blank in the certificate where the mortgagor's name should have appeared. *See Smith's Lessee*, 13 Ohio at 269. Although *Smith's Lessee* was decided over 160 years ago, the four requirements discussed above for the proper execution of a mortgage that are in

force in Ohio today—including certification of the acknowledgment by the public official—were requirements under the Ohio statutory provision that controlled the outcome in *Smith's Lessee*. That statutory provision—Chapter 1365, section 1 of the statute passed on February 22, 1831 ("1831 Statute")—stated as follows:

> [A]ny deed, mortgage, or other instrument of writing, by which any land, tenement, or hereditament, shall be conveyed, or otherwise affected or incumbered in law ... shall be signed and sealed by the grantor or grantors, maker or makers, ... [and] such signing and sealing shall be acknowledged by such grantor or maker in the presence of two witnesses,[4] who shall attest such signing and sealing, and subscribe their names to such attestation; and such signing and sealing shall also be acknowledged by such grantor or grantors, maker or makers, before a judge of the Supreme Court or of the Court of Common Pleas, a justice of the peace, notary public, mayor, or other presiding officer of an incorporated town or city, *who shall certify such acknowledgment* on the same sheet on which such deed, mortgage, or other instrument of writing may be printed or written; ... and shall subscribe his name to such certificate.

3 Curwen's Rev. Statutes 2448–49 (Curwen 1854) (emphasis added) (footnotes omitted).

---

3. In this adversary proceeding the Certificate of Acknowledgment contains Buxton's name and therefore is not completely blank. The Certificate of Acknowledgment, however, is a blank acknowledgment for the purposes of this adversary proceeding because it does not identify the mortgagor (Phalen) who granted the interest the Trustee is trying to avoid. *See Thomas*, 2008 Bankr.LEXIS 1679, at *10 (holding that mortgage was not properly executed as to debtor's one-half interest in property because only the other mortgagor, not the one whose transfer the trustee was at-

tempting to avoid, was identified in the certificate of acknowledgment as a party acknowledging his signature on the mortgage); *Cala*, 2008 WL 2001761, at *3 (same); *Field v. ABN AMRO Mortg. Grp., Inc. (In re Wheeler)*, No. 04–1386, 2005 WL 4057841, at *3–4 (Bankr. S.D.Ohio July 21, 2005) (same).

4. As discussed in *Nowak*, 820 N.E.2d at 338–39, the Ohio legislature later eliminated the two-witness requirement effective February 1, 2002.

*Smith's Lessee*, therefore, is on point here. In *Smith's Lessee* the certificate of acknowledgment at issue—which appeared on a mortgage signed by Ezekiel Folsom dated February 21, 1835—stated as follows: "Personally appeared —————————————————, who acknowledged that he did sign and seal the foregoing instrument, and that the same is his free act and deed. WM BURTON, *Justice of the Peace.*" *Smith's Lessee*, 13 Ohio at 260. As Huntington does here, one party strenuously argued in *Smith's Lessee* that the mortgage should be considered properly executed given that the only defect alleged was the omission of the grantor's name from the blank space in the certificate of acknowledgment:

> The only defect in the acknowledgment is the omission of the grantor's name....
>
> Take the original deed and inspect it; see the printed form; see the date of it, which is February 21, 1835; see the acknowledgment, which is of the same date; see the name of William Burton, as a witness, and see his signature to the acknowledgment, and can there be any doubt but that the name of Folsom was omitted by mistake; is it not so apparent on the face of the paper, and should it not be so held? We can not see how the court can avoid giving such a construction....

*Id.* at 262. The Ohio Supreme Court evaluated the certificate of acknowledgment to determine if it complied with the requirement set forth in the 1831 Statute that the public official certify the acknowledgment of Mr. Folsom's signature. *See id.* at 268. Noting that the "requisitions of the statute ... require [a mortgage] to be acknowledged by the grantor, and such acknowledgment to be certified by the magistrate or person before whom it is made[,]" *id.* at 268, the Ohio Supreme Court held that, given the omission of Mr. Folsom's name from the blank space, the certificate of acknowledgment did not comply with the certification requirement. *Id.* at 269.

Subsequent decisions by Ohio courts have confirmed that *Smith's Lessee* means that a mortgage is defectively executed if the public official who subscribes his or her name to the certificate of acknowledgment fails to insert some identification of the mortgagor in the blank space in the certificate of acknowledgment. The Ohio Supreme Court even confirmed the holding of *Smith's Lessee* in *Dodd v. Bartholomew*, 44 Ohio St. 171, 5 N.E. 866, 868 (1886), a decision in which the court upheld the validity of a certificate of acknowledgment, but only because there was not a complete failure to identify the mortgagor. In that case the Ohio Supreme Court held that a mortgage—despite an incorrect description of the grantors in the certificate of acknowledgment as Charles B. Clark and Mary Clark rather than Charles A. Clark and Sarah Clark—was properly executed because the mistake was apparent from an examination of the mortgage. Importantly, however, the Ohio Supreme Court explained that the mistake made in *Dodd* was "very different from that where an error occurs in the execution of the instrument." *Dodd*, 5 N.E. at 868. Among the many examples the *Dodd* court provided of mistakes that would cause a mortgage to be defectively executed was one explicitly based on *Smith's Lessee*, which the Ohio Supreme Court in *Dodd* described as a case where "the name of the grantor was left blank in the certificate of acknowledgment, and did not, as in this case, refer to him as the above-named grantor." *Id.* More recently, an Ohio court of appeals confirmed that *Smith's Lessee* remains good law. *See Fifth Third Bank v. Farrell*, No. 09 CAE 11 0095, 2010 WL 3852223, at *4–6 (Ohio Ct.App. Sept.28, 2010) ("The first, and still controlling, case on this issue is *Smith's Lessee* ... In that case, the Supreme Court of

Ohio held that an acknowledgement that omitted the name of the mortgagor was defective.... [In *Dodd* ], the Court did not overrule *Smith's Lessee* but differentiated the facts in *Dodd* from *Smith's Lessee*, where the name of the grantor was left blank in the certificate of acknowledgement.... We therefore find, pursuant to *Smith's Lessee*, [that] the certificate of acknowledgement in the present case does not substantially comply with [§ 5301.01] because it was left blank.").

Likewise, numerous bankruptcy courts deciding mortgage-avoidance adversary proceedings governed by Ohio law have applied *Smith's Lessee* in holding that mortgages are defectively executed if the certificate of acknowledgment fails to name or otherwise identify the mortgagor.[5] And this Court has so held in several cases. *See, e.g., Sauer*, 417 B.R. at 533 (holding that a defective certification, in which the notary failed to identify the borrower in the acknowledgment, rendered the mortgage "defective and thus invalid as against third parties, such as a subsequent bona fide purchaser"); *Peed*, 403 B.R. at 534 (holding that failure to identify borrower in the certificate of acknowledgment rendered the certification faulty, the mortgage defective and thus invalid with respect to bona fide purchasers); *Leahy*, 376 B.R. at 832 (concluding that failure to properly certify an acknowledgment rendered mortgage defective). In addition, bankruptcy courts have held that a mortgage is improperly executed with respect

to a mortgagor who is not identified in the certificate of acknowledgment even if the other mortgagor is identified, which is the case here. *See Thomas*, 2008 Bankr.LEXIS 1679, at *10 (holding that mortgage was not properly executed as to debtor's one-half interest in property because he was not identified in the certificate of acknowledgment as a party acknowledging his signature on the mortgage even though another mortgagor was so identified); *Cala*, 2008 WL 2001761, at *3 (same); *Wheeler*, 2005 WL 4057841, at *3-4 (same). In effect, Huntington is asking this Court to now determine that its prior decisions as well as those of the many other bankruptcy courts to have decided the certification issue in the context of blank acknowledgments were all wrongly decided. For the reasons set forth below, the Court concludes that it must adhere to its prior rulings, and those of the other bankruptcy courts that have decided the issue, and continue to apply *Smith's Lessee* in blank-acknowledgment cases.

 In applying *Smith's Lessee* in this adversary proceeding, the Court first notes "the restricted relationship a federal court has in applying a state statute when that statute has been the subject of interpretation and application by the state's highest court." *Hazlett v. Chase Home Fin., LLC (In re Nowak)*, 414 B.R. 269, 275 (Bankr.S.D.Ohio 2009) (internal quotation marks omitted). The state statute " 'must be given the meaning and effect

---

5. *See Noland v. Burns (In re Burns)*, 435 B.R. 503, 510 (Bankr.S.D.Ohio 2010); *Helbling v. Cleary (In re Cleary)*, No. 09–1285, 2010 WL 2649949, at *4 (Bankr.N.D.Ohio June 1, 2010); *Simon v. Citimortgage, Inc. (In re Doubov)*, 423 B.R. 505, 512 (Bankr.N.D.Ohio 2010); *Terlecky v. Chase Home Fin., LLC (In re Sauer)*, 417 B.R. 523, 532–33 (Bankr. S.D.Ohio 2009); *Drown v. Countrywide Home Loans, Inc. (In re Peed)*, 403 B.R. 525, 534 (Bankr.S.D.Ohio 2009), *aff'd*, No. C2–09–347 (S.D.Ohio Feb. 18, 2010); *Rieser v. Fifth Third Mortg. Co. (In re Wahl)*, 407 B.R. 883, 888–89 (Bankr.S.D.Ohio 2009); *Terlecky v. Countrywide Home Loans, Inc. (In re Baruch)*, No. 08–2069, 2009 Bankr.LEXIS 608, at *24 (Bankr.S.D.Ohio Feb. 23, 2009); *Cala*, 2008 WL 2001761, at *6; *Thomas*, 2008 Bankr.LEXIS 1679, at *15; *Geygan v. World Sav. Bank, FSB (In re Nolan)*, 365 B.R. 804, 806 (Bankr.S.D.Ohio 2007), *aff'd*, 383 B.R. 391 (6th Cir. BAP 2008); *Leahy*, 376 B.R. at 834; *Wheeler*, 2005 WL 4057841, at *3–4.

attributed to it by the highest court of the state, as if the state court's decision were *literally incorporated into the enactment*, whatever the federal tribunal's opinion as to the correctness of the state court's views.'" *Id.* at 275 (emphasis added) (quoting *Burns Mortg. Co. v. Fried,* 292 U.S. 487, 494, 54 S.Ct. 813, 78 L.Ed. 1380 (1934)).[6] "Literally incorporat[ing]" *Smith's Lessee* into the 1831 Statute results in a certification requirement under which the notary public must fill in the blank in a certificate of acknowledgment with the name or other identification of the person who is acknowledging the signature ("Certification Requirement"). And, as discussed above, the language of § 5301.01(A) with respect to the Certification Requirement is the same as the language of the 1831 Statute.[7] The Court therefore must consider *Smith's Lessee* as providing the controlling rule of law with respect to the Certification Requirement under § 5301.01(A). *See State v. Ferguson,* 120 Ohio St.3d 7, 896 N.E.2d 110, 116 (2008) (" 'Where a statute is construed by a court of last resort having jurisdiction, and such statute is thereafter amended in certain particulars, but remains unchanged so far as the same has been construed and defined by the court, it will be presumed that the Legislature was familiar with such interpretation at the time of such amendment, and that such interpretation was intended to be adopted by such amendment as part of the law, unless express provision in made for a different construction.' ") (quoting *Spitzer v. Stillings,* 109 Ohio St. 297, 142 N.E. 365 (1924) (syllabus ¶ 4)); *Ziegler v. IBP Hog Mkt. Inc.,* 249 F.3d 509, 516 (6th Cir.2001) ("[W]here a statute that has been construed by the Ohio Supreme Court is later amended having substantially the same terms, the Ohio legislature is presumed to have been familiar with its construction and to have adopted it as part of the law, unless it expressly provides for a different construction."). Again, the 1831 Statute interpreted by the Ohio Supreme Court in *Smith's Lessee* has been amended from time to time, but the Certification Requirement has remained unchanged, including in § 5301.01(A). The Court, therefore, must presume that the Ohio legislature was familiar with *Smith's Lessee* when it enacted

---

**6.** *See also Johnson v. Fankell,* 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); *Shults v. Moore,* 22 F. Cas. 51, 52 (C.C.D.Ohio 1839) (No. 12,824) ("We do not inquire whether the construction of a statute by the supreme court of the state, is right or wrong according to our views, but we receive it as the law of the state.").

**7.** So too was a statutory certification requirement in force for a time between the 1831 Statute and the enactment of § 5301.01(A). The statute imposing this requirement, Section 8510, Ohio General Code, stated as follows:

A deed, mortgage, or lease of any estate or interest in real property, must be signed by the grantor, mortgagor, or lessor, and such signing be acknowledged by the grantor,

mortgagor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing also must be acknowledged by the grantor, mortgagor, or lessor before a judge of a court of record in this state, or a clerk thereof, a county auditor, county surveyor, notary public, mayor, or justice of the peace, who shall certify the acknowledgment on the same sheet on which the instrument is written or printed, and subscribe his name thereto.

*See S.S. Kresge Co. v. Butte,* 136 Ohio St. 85, 23 N.E.2d 944, 945 (1939). Another intervening statute, § 4106 of the Ohio Revised Statutes (passed March 19, 1887), also required the public official to "certify the acknowledgment[.]" 2 Bates Ann. Revised Statutes 2282 (W.H. Anderson Co. 1905). Thus, it appears that the Certification Requirement has been in force continually in Ohio at least since the time the Ohio Supreme Court interpreted the 1831 Statute in *Smith's Lessee* in 1844.

§ 5301.01(A) and must construe § 5301.01(A) accordingly. *Cf. Nowak,* 414 B.R. at 281 (holding that the question of whether § 5301.01(A) requires the inclusion of the certifying officer's official title should be answered in a manner consistent with *Johnston's Lessee v. Haines,* 2 Ohio 55 (Ohio 1825), a decision issued by the Ohio Supreme Court construing an earlier statutory provision that was substantially similar to § 5301.01(A)). Construing § 5301.01(A) in light of *Smith's Lessee,* the Court concludes that a notary public does not certify a mortgagor's acknowledgment of his or her signature and that the mortgage therefore is defectively executed with respect to that mortgagor if the notary public fails to fill in a blank in the certificate of acknowledgment with the name or some other effective identification of the mortgagor (*e.g.,* the "above-named grantor," as in *Dodd* ).

### 3. The URAA Did Not Eliminate the Certification Requirement.

■ Faced with *Smith's Lessee* and the great weight of authority applying it in blank-acknowledgment cases, Huntington contends that *Smith's Lessee* "is no longer precedent for the conclusion that blank acknowledgments are fatal." Opp'n Br. at 10. This is an argument that lenders have begun to make only relatively recently, so several bankruptcy courts, including this one, previously have applied *Smith's Lessee* to hold that mortgages with blank acknowledgments are defectively executed without directly addressing the argument now being made by Huntington. *See Cleary,* 2010 WL 2649949, at *4; *Doubov,* 423 B.R. at 512; *Sauer,* 417 B.R. at 532–33; *Peed,* 403 B.R. at 534; *Cala,* 2008 WL 2001761, at *6; *Leahy,* 376 B.R. at 834. Because the Ohio Supreme Court also has not yet addressed the issue of whether the URAA legislatively overruled *Smith's Lessee,* the Court's role is to "ascertain how that court would rule if it were faced with

the issue." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999). In doing so, the Court notes again that *Smith's Lessee* is literally incorporated into § 5301.01(A), and that Huntington's argument, therefore, essentially is that the URAA, which first became effective in Ohio in 1974 (after the enactment of § 5301.01(A)), legislatively repealed the Certification Requirement of § 5301.01(A).

■ The Court must reject this argument for two reasons. First, there is nothing in the URAA that expressly repeals the Certification Requirement of § 5301.01(A). Thus, the Court could reach the conclusion Huntington posits only if the URAA repealed the Certification Requirement of § 5301.01(A) by implication. But a finding of repeal by implication is contrary to Ohio law. *See City of Cincinnati v. Thomas Soft Ice Cream, Inc.,* 52 Ohio St.2d 76, 369 N.E.2d 778, 780 (1977) ("In essence, it is appellant's position that [Ohio Revised Code § ] 718.06(B), effective July 25, 1969, was impliedly repealed by the enactment of [Ohio Revised Code § ] 2901.13(A)(2), effective July 1, 1974. This argument runs contrary to a long-standing rule of statutory interpretation, which provides that courts will not hold prior legislation to be impliedly repealed by the enactment of subsequent legislation unless the subsequent legislation clearly requires such a holding." (citing *Ludlow's Heirs v. Johnston,* 3 Ohio 553, 564 (1828))); *Lynn v. Supple,* 166 Ohio St. 154, 140 N.E.2d 555, 559 (1957) ("If, by what it does, the General Assembly intends in effect to change the law as previously announced by this court, it should express such an intention. Such an intention will not ordinarily if ever be implied from its silence.").

Moreover, § 5301.01(A)'s Certification Requirement is consistent with the URAA. In preparing the Certificate of Acknowledgment the notary public used the form

that the URAA specifically identifies as a sufficient form of certificate of acknowledgment:

> The forms of acknowledgment set forth in this section may be used and are sufficient for their respective purposes under any section of the [Ohio] Revised Code. . . .
>
>> (A) "For an individual acting in his own right:
>>
>> State of _____
>>
>> County of
>
> _____
>
> The foregoing instrument was acknowledged before me this (date) by *(name of person acknowledged.)*
>
> (Signature of person taking acknowledgment) (Title or rank) (Serial number, if any)". . . .

Ohio Rev.Code Ann. § 147.55(A) (emphasis added); *see also* Ohio Rev.Code Ann. § 147.54(A) ("The form of a certificate of acknowledgment . . . shall be accepted in [Ohio] if . . . [t]he certificate is in a form prescribed by the law or regulations of this state[.]"). The form reproduced above clearly contemplates that the certificate of acknowledgment is to include the name of the person acknowledging the document. Although it is true that § 147.55(A) provides that "[t]he authorization of the forms in this section does not preclude the use of other forms[,]" Huntington did not use another form. It used the form set forth in § 147.55(A). And, consistent with the Certification Requirement of § 5301.01(A) and *Smith's Lessee,* that form clearly requires that the blank space be filled in so that the person who is acknowledging his or her signature is identified.

Requiring that the blank on a certificate of acknowledgment be completed so as to identify the person doing the acknowledging is not an outmoded practice, nor does it merely reflect some parochial concern of the State of Ohio. As discussed below, recent decisions applying the law of

other states have reached the same result as that required by *Smith's Lessee.* For example, in *Gregory v. Ocwen Fed. Bank (In re Biggs),* 377 F.3d 515 (6th Cir.2004), the Sixth Circuit, construing Tennessee law, emphasized the importance of identifying the person acknowledging his or her signature on the mortgage by completing the appropriate blank in the certificate of acknowledgment. In *Biggs,* the Sixth Circuit was asked to determine whether the omission of the debtors' names from a certificate of acknowledgment on a deed of trust governed by Tennessee law (which has adopted the Uniform Acknowledgments Act (1892) with modifications, *see* Tenn.Code Ann. § 66–22–103(2) (West 2011)) rendered the document invalid against bona fide purchasers. The Sixth Circuit explained the importance of identifying the person who is acknowledging his or her signature, stating that "[t]he procedure serves to verify the identity of the individual signing the instrument and to establish a fraud-free system for recording the ownership of real property—a necessary prerequisite to any free market." *Biggs,* 377 F.3d at 519. The Sixth Circuit found that "the integrity of the acknowledgment is placed in doubt because it omits the most important information on the acknowledgment form: who, if anyone, is doing the acknowledging?" *Id.* The Sixth Circuit also stated that "[w]hen notaries . . . merely take pre-preprinted forms and purport to notarize them without stating whose signatures they have notarized and who, if anyone, appeared before them, they . . . fail to accomplish the signal reason for having an acknowledgment in the first place." *Id.* at 520. If the lender's argument were accepted, "a notary merely could notarize a statutorily-approved form—without filling in a single blank space—and that alone would suffice to satisfy the requirement." *Id.* But "[f]ar from being a finicky exaltation of form over

substance, the requirement that the grantors' names appear on the acknowledgment is essential to giving the acknowledgment statute the modest substance that the Tennessee legislature thought it deserved." *Id.* Although *Biggs* was decided under Tennessee law, Ohio law also recognizes that the purpose of certificate of acknowledgments is "affording proof of the due execution of the deed [or mortgage] by the grantor, sufficient to authorize the register of deeds to record it." *Citizens Nat'l Bank in Zanesville v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329, 332 (1956) (internal quotation marks omitted). The Court, therefore, concludes that the result would be the same under Ohio law.

According to Huntington, the result should be different under the URAA because "the forms set forth in the [URAA] are not mandatory." Opp'n Br. at 10. Although it is true that the forms are not mandatory, *see* Ohio Revised Code § 147.56 ("[The URAA] provide[s] an additional method of proving notarial acts and [does] not diminish or invalidate the recognition accorded to notarial acts by other laws or regulations of this state."), that fact does not support Huntington's position. Quite simply, there are no other laws or regulations of Ohio that would recognize the validity of a certificate of acknowledgment when the space where the person doing the acknowledging should have been identified is left blank. Indeed, as discussed above at length, the Ohio Supreme Court in *Smith's Lessee* held that leaving such a space blank means that the mortgage is defectively executed.

■ The Court's conclusion that the Ohio Supreme Court would hold that the enactment of the URAA did not affect the vitality of the rule of law announced in *Smith's Lessee* also finds support in the fundamental principle of stare *decisis*, which applies with even greater force in the area of real property law. *See Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 381, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977) ("Substantive rules governing the law of real property are peculiarly subject to the principle of *stare decisis*."). In predicting how the Ohio Supreme Court would rule on the issue of whether the result in *Smith's Lessee* would be different after the enactment of the URAA, "[t]he Court must ... decide this issue the way that [it] believe[s] the [Ohio Supreme Court] would decide it." *Nowak*, 414 B.R. at 276 (internal quotation marks omitted). And the Ohio Supreme Court has consistently applied the principle of *stare decisis* in determining disputes involving real property, including the adjudication of priorities among interest holders. *See Strang v. Beach*, 11 Ohio St. 283, 289 (Ohio 1860) ("[I]f the question had not been determined by adjudication in this State, and affirmed and adhered to for a number of years, a majority of this court would feel constrained to take a different view of it; yet, inasmuch as it had become a rule of property in settling priorities among creditors, the court acting on the maxim *stare decisis* would not disturb it. Now, for these reasons, we will not disturb the rule thus established. It has the merit, at least, of simplicity, and of being well known and understood." (internal quotation marks omitted)). See also *Farrell*, 2010 WL 3852223, at *10 ("[W]e think that the maxim, *stare decisis et non quieta movere*, is the safe and judicial policy, and should be adhered to. If the law, as heretofore pronounced by the court, in giving a construction to the statute, ought not to stand, it is in the power of the Legislature to amend it without impairing rights acquired under it. Therefore, ... we follow ... precedents based upon *stare decisis* and to lend stability to future property transactions." (citation and internal quotation marks omitted)); *Odita*, 822 N.E.2d at 829 (applying *stare decisis* in the real

property context); *Porter Drywall Co. v. Haven, Inc. (In re Haven, Inc.)*, No. 04–8058, 326 B.R. 901 (table), 2005 WL 927666, at *6 (6th Cir. BAP Apr. 7, 2005) (same). The rule established by *Smith's Lessee* is a long-established substantive rule governing the law of real property in Ohio. The Court thus concludes that the Ohio Supreme Court would apply *Smith's Lessee* after the enactment of the URAA and that the decision remains good law despite its vintage. Under controlling Ohio law, an instrument affecting real estate, such as Phalen's Mortgage, is defectively executed with respect to any person who is not identified in the certificate of acknowledgment. In light of the Ohio Supreme Court's decision in *Smith's Lessee*, therefore, the Court has no choice but to conclude that the Certificate of Acknowledgment is defective and, consequently, to hold that Phalen's Mortgage is improperly executed.

### 4. The Certificate of Acknowledgment Does Not Substantially Comply with Ohio Law.

 Huntington also suggests that the Certificate of Acknowledgment is in substantial compliance with Ohio law. *See* Opp'n Br. at 7 ("Ohio courts found it appropriate to approve the substantial compliance test and to validate acknowledgments with incorrect information (the concept being errors in execution versus errors in identification)."). Under the substantial-compliance standard, "[t]he certificate ... need not be in the words of the statute; if it contains the substance of the requirements, though in the language of the officer, it will be sufficient." *Ward's Heirs v. McIntosh*, 12 Ohio St. 231, 242 (Ohio 1861). Under this standard, however, "no substantial part of the requirement can be dispensed with, and it must appear expressly or by necessary inference from the language of the certificate, that all the material provisions have

been complied with." *Id.* The execution of a mortgage may be in substantial compliance with Ohio law and thus not defective even where the mortgagor's name itself is not set forth in the certificate of acknowledgment so long as the certificate effectively identifies the mortgagor. *See Drown v. Kondaur Capital Corp. (In re Amadu)*, 443 B.R. 145, 151 (Bankr. S.D.Ohio 2010) (upholding the validity of a certificate of acknowledgment where "the person acknowledging the execution of the Mortgage was identified by the term 'Mortgagor' typed into the certificate of acknowledgment, and Debtor is twice identified as the 'Mortgagor' within the mortgage document itself"); *Dodd*, 5 N.E. at 868 (holding that certificate of acknowledgment was sufficient where it identified "the above-named grantors" and also identified them by partially inaccurate names); *Thomas*, 2008 Bankr.LEXIS 1679, at *12–13 ("According to *Dodd's* interpretation of *Smith's Lessee*, a mortgage is defectively executed if the certificate of acknowledgment omits the name of the grantor and does not contain additional identifying language such as 'the grantors in the above-named instrument.'"). But courts in this district consistently have held that a certificate of acknowledgment does not satisfy the substantial-compliance standard if it completely fails to identify the mortgagor. *See Burns*, 435 B.R. at 512; *Cleary*, 2010 WL 2649949, at *4–5; *Doubov*, 423 B.R. at 512; *Sauer*, 417 B.R. at 532–35; *Peed*, 403 B.R. at 534–35; *Wahl*, 407 B.R. at 888–90; *Leahy*, 376 B.R. at 834.

Despite this, Huntington relies on the doctrine of substantial compliance and cites *Menninger v. First Franklin Fin. Corp. (In re Fryman)*, 314 B.R. 137 (Bankr.S.D.Ohio 2004), in support of the application of that doctrine here. *Fryman* and the doctrine of substantial compliance do not support Huntington's position. In

*Fryman,* the mortgage at issue was signed by Phyllis Fryman and Ronald Fryman; the certificate of acknowledgment included the name of only one of them but also recited that " 'they' examined, read, and signed the instrument of 'their' free act and deed[,]" with the words "they" and "their" having been handwritten by the notary, which led the bankruptcy court to find that the notary public certified the acknowledgment of both mortgagors. *Fryman,* 314 B.R. at 138. By contrast, there is absolutely nothing in the Certificate of Acknowledgment that would lead the Court to conclude that the notary public certified any acknowledgment Phalen may have made of his signature; the Certificate of Acknowledgment does not refer to Phalen as "the above-named grantor" or in any other fashion that effectively identifies him. Other courts have drawn this same distinction between the facts before them and the fact pattern in *Fryman. See Burns,* 435 B.R. at 512 n. 8; *Doubov,* 423 B.R. at 512; *Wahl,* 407 B.R. at 889; *Wheeler,* 2005 WL 4057841, at \*3. In other words, there is no error in the Certificate of Acknowledgment to support a finding of substantial compliance; there is instead a complete failure to identify Phalen. *Cf. Biggs,* 377 F.3d at 519 ("The 'substantial compliance' test [under Tennessee law] addresses the unintentional omission of *words* by the officer taking an acknowledgment, not the unintentional omission of the *names* of the acknowledging individuals." (citation and internal quotation marks omitted)).

In support of the application of the substantial-compliance doctrine here, Huntington also states that "[t]he Court in [*Mid–Am. Nat'l Bank & Trust Co. v. Gymnastics Int'l, Inc.,* 6 Ohio App.3d 11, 451 N.E.2d 1243 (1982)] considered both *Smith's Lessee* and the [URAA]. In upholding that acknowledgment, the Court there said that the forms set forth in the uniform act are not mandatory. That posi-

tion gives credence to the view that *Smith's Lessee* is no longer precedent for the conclusion that blank acknowledgments are fatal. *Accord, Administrator of Veterans Affairs.*" Opp'n Br. at 10. The cases cited by Huntington are, however, inapposite and do not support its position. In *Mid–American,* the court, relying on *Dodd* rather than *Smith's Lessee,* concluded that, "although the recital is to some extent incomplete, the certificate of acknowledgment substantially complies with the essential requisites of [Ohio Revised Code § ] 5301.01." *Mid–Am. Nat'l Bank,* 451 N.E.2d at 1245. In *Mid–American,* the certificate of acknowledgment reflected that a corporate mortgagor personally appeared and acknowledged the signing of the instrument. *Id.* at 1244. In fact, the corporation had appeared through its president and secretary-treasurer. The court concluded that "[i]t [was] apparent from the face of the instrument that 'the above named ... mortgagors, Gymnastics International, Inc.' appeared through its officers...." *Id.* at 1245. The notary public—who also was a witness—observed the officers' signing and acknowledgments. *Id.* at 1246. Under those facts—which are not present here—the court found substantial compliance with Ohio Revised Code § 5301.01. *See id. See also Adm'r of Veterans Affairs v. City Loan Co.,* No. 17–83–12, 1985 WL 9128, at \*3 (Ohio Ct.App. May 7, 1985) (following *Mid–American* and concluding that the mortgage substantially complied with Ohio Revised Code § 5301.01 where the certificate of acknowledgment contained a clerical error that improperly identified the mortgagee loan company as the person who appeared and acknowledged signing the instrument). Contrary to Huntington's characterization of the holding in *Mid–American*—an opinion rendered long after the enactment of the URAA in Ohio—the court in that case appears to have presumed that *Smith's*

*Lessee* remained good law. *See Mid–Am. Nat'l Bank,* 451 N.E.2d at 1245 ("Appellant relies on the case of *Smith's Lessee v. Hunt* (1844), 13 Ohio 260, where the court held that an acknowledgment which omits the name of the mortgagor is defective. We do not find *Smith's Lessee, supra,* determinative in the case *sub judice,* which involves an incomplete description of the grantor and not the total omission as in *Smith's Lessee.*").

### 5. Using the Phrase "Acknowledged Before Me" Does Not in and of Itself Satisfy the Certification Requirement.

 In addition to arguing that the URAA legislatively overruled *Smith's Lessee,* Huntington also argues that the use of the phrase "acknowledged before me" in and of itself satisfies the Certification Requirement of § 5301.01(A). Again, the Ohio Supreme Court has not yet ruled on this issue. In predicting how the Ohio Supreme Court would rule, the Court may consult "doctrinal trends embraced by [Ohio's] appellate courts" as well as "decisions from other jurisdictions...." *Rousey v. United States,* 115 F.3d 394, 397 (6th Cir.1997) (internal quotation marks omitted); *see also In re Kimble,* 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) ("[T]he Court must make the best prediction ... of what the [Ohio] Supreme Court would do if confronted with [the issue]." (internal quotation marks omitted)). Thus, in analyzing Huntington's argument in this regard, the Court will consider, among other authorities, decisions by the Sixth Circuit, the Bankruptcy Appellate Panel for the Sixth Circuit ("BAP"), several bankruptcy courts and an Ohio court of appeals. First, though, the Court will set forth and explain Huntington's argument:

> [The Certificate of Acknowledgment] meets the language requirements of Ohio law because it contains the phrase 'acknowledged before me.' R.C. § 147.54." ...
>
> ....
>
> [S]ince Ohio defines "acknowledged before me" to mean "[t]he person acknowledging appeared before the [notary]" [R.C. § 147.541(A) ]; And the words "acknowledged before me" means that the person "acknowledged he executed the instrument" [§ 147.541(B) ] and that the person acknowledging "executed the instrument for the purposes therein stated." [R.C. § 147.541(C)(1) ]; And the phrase "acknowledged before me" means that the notary "either knew or had satisfactory evidence that the person acknowledging was the person named[."] [R.C. § 147.541(D) ], the reasonable conclusion to be reached is that if there is no dispute that the mortgagors signed the instrument and the words "acknowledged before me" are contained in the acknowledgment, the dots are connected, identification has been made and there is no execution issue. In effect, the words "acknowledged before me" means "blank" is the same as "Ezeki[e]l Folsom[."] *See* [ ] *Smith's Lessee* [,] *supra.*

Opp'n Br. 3–4, 9. In addressing this argument, the Court will start where Huntington does, with the assertion that the Certificate of Acknowledgment "meets the language requirements of Ohio law because it contains the phrase 'acknowledged before me[.'] R.C. § 147.54." *Id.* at 3–4. True, the URAA provides that "[t]he form of a certificate of acknowledgment ... shall be accepted in [Ohio] if ... (C) The certificate contains the words 'acknowledged before me,' or their substantial equivalent." Ohio Rev.Code Ann. § 147.54(C). But that only goes so far. The statutory provision provides that the *form* shall be accepted, not that the *certification* shall be effective. In addition, the use of the word *form* implies that the

words "acknowledged before me" are to be used with other words that make up the form. If Huntington's argument were accepted, then a certificate of acknowledgment would be sufficient if it merely stated "Acknowledged Before Me" and was signed by the notary public. Huntington points to no case law, and the Court's independent research has uncovered none, that would support the sufficiency of such a certificate of acknowledgment.

Nor is Huntington's argument supported, as it contends, by the definition of "acknowledged before me" set forth in § 147.541:

The words "acknowledged before me" mean[ ] that:

(A) The person acknowledging appeared before the person taking the acknowledgment;

(B) He acknowledged he executed the instrument;

(C) In the case of:

(1) A natural person, he executed the instrument for the purposes therein stated;

. . . .

(D) The person taking the acknowledgment either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate.

Ohio Rev.Code Ann. § 147.541. Use of this phrase satisfies the certification requirements of the URAA, which are set forth in § 147.53,[8] see Roberts, 402 B.R. at 816, so long as the words "acknowledged before me" are combined with some identification of the person who is doing the acknowl-

edging. But Huntington's contention that it is sufficient to use the phrase "acknowledged before me" without actually identifying the person doing the acknowledging is a bridge too far. For example, using the definition of "acknowledged before me" set forth in § 147.541, a certificate of acknowledgment on a mortgage signed by an individual would be sufficient under Huntington's reasoning if the certificate stated that "the person acknowledging appeared before me, acknowledged he executed the instrument and executed the instrument for the purposes therein stated, and I had satisfactory evidence that *the person acknowledging was the person named in the instrument or certificate.*" The italicized language constitutes, according to Huntington, a certification by the notary public that the "person named in the instrument" (*i.e.,* the mortgagor named in the mortgage, which here includes Phalen) acknowledged his or her signature. In turn, it could be argued that this means that the Certificate of Acknowledgment effectively identifies the person acknowledging his or her signature on the mortgage as much as if the certificate stated "acknowledged before me by the above-named grantor," a formulation that would have been sufficient under Ohio law. *See Amadu,* 2010 WL 4057814, at *5 (upholding the validity of a certificate of acknowledgment where "the person acknowledging the execution of the Mortgage was identified by the term 'Mortgagor' typed into the certificate of acknowledgment, and Debtor is twice identified as the 'Mortgagor' within the mortgage document itself"); *Dodd,* 5 N.E. at 868 (holding that certificate of acknowledg-

---

**8.** This section provides as follows:

The person taking an acknowledgment shall certify that:

(A) The person acknowledging appeared before him and acknowledged he executed the instrument;

(B) The person acknowledging was known to the person taking the acknowledgment,

or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

Ohio Rev.Code Ann. § 147.53.

ment was sufficient where it identified "the above-named grantors"). And, according to Huntington, under the URAA, using the words "acknowledged before me" is a shorthand way of saying exactly the same thing. In other words, Huntington's argument appears to be that the phrase "[t]he foregoing instrument was acknowledged before me this 3rd day of December, 2008 by Lorie Buxton" actually means "[t]he foregoing instrument was acknowledged before me this 3rd day of December, 2008 by Lorie Buxton and the other person named in the Short Form Mortgage." *See* Opp'n Br. at 9 ("In effect, the words 'acknowledged before me' means 'blank' is the same as 'Ezeki[e]l Folsom[.'] *See* [ ] *Smith's Lessee* [,] *supra*.").

For several reasons, Huntington's argument cannot carry the day. First, as discussed above, the notary public did not use a form that merely stated "acknowledged before me this [date]." Rather, the notary public used a form that stated "acknowledged before me by _____" and, under *Smith's Lessee, Biggs* and the other case law discussed above, the blank needs to be filled in to identify the mortgagor if the certification is to be valid.[9] Second, the notary public identified Buxton, but not Phalen, in the Certificate of Acknowledgment. Despite this fact, Huntington contends that a "[bona fide] purchaser can determine from the document that [Phalen] was the person executing and acknowledging the mortgage." Opp'n Br. at 2. Huntington attempts to construe use of the phrase "acknowledged before me" to mean that the "reasonable conclusion to be reached is that if there is no dispute that the mortgagors signed the instrument and the words 'acknowledged before me' are contained in the acknowledgment, the dots are connected, identification has been made and there is no execution issue." Opp'n Br. at 9. This argument defies logic. To the contrary, when only one of two borrowers is identified in the certificate of acknowledgment, the Court and subsequent purchasers cannot determine whether the other borrower acknowledged his or her signature before the notary public or signed the instrument at a different time, if at all. In other words, where, as here, a notary public specifically certifies one mortgagor's acknowledgment, it cannot be the case that the use of the words "acknowledged before me" means that the notary public also certified the acknowledgment, if any, of the omitted mortgagor.

Third, Huntington is positing a sea change in the certification requirement for the proper execution of mortgages that went unnoticed, as far as the Court can tell, by anyone at the time of enactment of the URAA or since. Quite simply, the Court's research has uncovered no primary or secondary authorities, legislative history or other sources that support Huntington's arguments. The only parties that have interpreted the URAA as Huntington does now are lenders whose mortgages are subject to being avoided based on blank acknowledgments. But whenever lenders have made the argument Huntington is now making based on that interpretation of the URAA, they have lost before the Sixth Circuit, the BAP, bankruptcy courts applying Kentucky law[10] and a

---

9. For the reasons explained below, the result would be the same if the certificate of acknowledgement used the phrase "acknowledged before me" and was not followed by a blank.

10. Because Kentucky has adopted the URAA, decisions interpreting its laws are highly persuasive. *See Geygan v. World Sav. Bank, FSB*

*(In re Nolan)*, 383 B.R. 391, 396 (6th Cir. BAP 2008). ("[T]he Ohio and Kentucky statutes are virtually identical. As such, we find the case law construing the Kentucky statutes to be highly persuasive in this regard."). *See also* Ohio Rev.Code Ann. § 147.57 (stating that the URAA "shall be so interpreted as to

bankruptcy court applying Ohio law. In addition, the argument has been rejected, at least implicitly, by an Ohio court of appeals in a recent decision. The Court will discuss these decisions, some more fully than others, in turn.

The Sixth Circuit analyzed the defective certificate-of-acknowledgment issue under the law of Kentucky in *Burden v. CIT Grp./Consumer Fin., Inc. (In re Wilson)*, 318 Fed.Appx. 354 (6th Cir.2009). The certificate of acknowledgment at issue in *Wilson* stated that "[t]he foregoing instrument is acknowledged before me this *08* day of *MAY, 2001." Id.* at 355. As this language demonstrates, the certificate of acknowledgment in Wilson did not include the typical formulation used in blank-acknowledgment cases (*i.e.,* "acknowledged before me by [blank]"). The certificate did, though, fail to identify the person acknowledging the signature on the mortgage, and the Sixth Circuit's holding in *Wilson* provides strong support for the view that the use of the phrase "acknowledged before me" does not in and of itself identify the person who purportedly acknowledged his or her signature. In *Wilson,* the defendants/creditors argued, among other things, that "the notary statement that failed to name the individuals signing the Mortgage in the Certificate of Acknowledgment [did] comply with Ky. Rev. Stat[.] § 423.130, when read together with Ky.Rev.Stat. §§ 423.140 and 423.150...." *Wilson,* 318 Fed.Appx. at 358.[11] In holding that the mortgage was

defectively executed, the Sixth Circuit relied on Ky.Rev.Stat. § 423.130. According to the Sixth Circuit, this provision—which is virtually identical to Ohio Revised Code § 147.53—"requires that a notary identify in the Certificate of Acknowledgment the names of the individuals who signed the mortgage." *Wilson,* 318 Fed.Appx. at 358. The Sixth Circuit cited several decisions in which the BAP had held that blank acknowledgments were defective even though the notary public had used the phrase "acknowledged before me." *See MG Invs., Inc. v. Johnson (In re Cocanougher)*, 378 B.R. 518, 522–23 (6th Cir. BAP 2007); *Select Portfolio Servs. v. Burden (In re Trujillo)*, 378 B.R. 526, 533 (6th Cir. BAP 2007); *Countrywide Home Loans, Inc. v. Gardner (In re Henson)*, 391 B.R. 210 (table), 2008 WL 2684847, at *3–6 (6th Cir. BAP July 9, 2008). *See also Rogan v. America's Wholesale Lender (In re Vance)*, 99 Fed.Appx. 25, 28 (6th Cir. 2004) (holding that the failure to identify the person acknowledging his or her signature in the certificate of acknowledgment rendered the mortgage defectively executed and unable to provide constructive notice to bona fide purchasers under Kentucky law).

Despite these precedents, as Huntington does here, the creditors in *Wilson* urged the court to conclude that there was no statutory requirement that a notary public name or otherwise identify the person acknowledging the mortgage, *Wilson,* 318

---

make uniform the laws of those states which enact it").

**11.** Kentucky Revised Statutes §§ 423.130, 423.140 and 423.150 constitute part of Kentucky's version of the URAA; these statutory provisions are essentially identical to Ohio Revised Code §§ 147.53, 147.54 and 147.55 respectively. In particular, § 423.130 provides as follows:

The person taking an acknowledgment shall certify that:

(1) The person acknowledging appeared before him and acknowledged he executed the instrument; and

(2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

Ky.Rev.Stat. Ann. § 423.130 (West 2011).

Fed.Appx. at 359, but to hold instead that a certificate of acknowledgment is sufficient if it merely contains the phrase "acknowledged before me":

Essentially, the Creditors argue that the phrase "acknowledged before me," satisfies as a matter of law the requirement of Ky.Rev.Stat. § 423.130 that the notary certify that the person acknowledging the instrument appeared before the notary, acknowledged that he executed the document, and was known to the notary to be the person described therein and who executed the instrument. The Creditors argue there is no need for the notary to identify the person acknowledging if he and the person executing the instrument are one and the same.

*Id.* at 360. The creditors in *Wilson* relied on the URAA definition of the phrase "acknowledged before me" as set forth in Ky.Rev.Stat. § 423.150, *see id.*, which is identical to Ohio Revised Code § 147.541. Rejecting the argument that the use of the phrase "acknowledged before me" alone served to identify the person acknowledging his or her signature, the Sixth Circuit concluded that, because the notary public failed to identify the mortgagors in the acknowledgment as required by Ky. Rev.Stat. § 423.130, *id.* at 362, the mortgage was improperly acknowledged, did not provide constructive notice to the bankruptcy trustee and was subject to avoidance under § 544. *Id.* at 364. In so holding, the Sixth Circuit stated:

Section 423.130, referenced by *Vance* and its progeny, is authority for the requirement that a certificate of acknowledgment must name or identify the person acknowledging the instrument in order to provide constructive notice. Under the Creditors' argument, the pertinent statutes, except for § 423.130, would be read together and § 423.150 would supercede § 423.130. Section 423.150 was enacted in 1970 at the same time as § 423.130 and has

never been interpreted to negate the requirements of § 423.130. Such an interpretation of § 423.150 would make § 423.130 superfluous and undermine the *Vance* court's determination that § 423.130 was not satisfied when the names or identities of those acknowledging the instrument were omitted from the certificate of acknowledgment.

*Id.* at 361 (quoting *Trujillo,* 378 B.R. at 537).

Similarly, in *Trujillo,* the debtor had executed a mortgage on the same page as the notary public's certificate of acknowledgment, and the phrase "acknowledged before me" was used in the certificate. The notary public, however, failed to identify the debtor in the certificate. *Trujillo,* 378 B.R. at 529. The creditors argued that this failure was immaterial under Kentucky's version of the URAA, contending that the use of the phrase "acknowledged before me" alone was sufficient and "satisfies as a matter of law the ... requirement that the notary certify that the person acknowledging the instrument appeared before the notary, acknowledged that he executed the document, and was known to the notary to be the person described in and who executed the instrument[,]" that "there is no need for the notary to identify the person acknowledging if he is one and the same as the person executing the instrument." *Id.* at 535. After quoting the relevant provisions of Kentucky's version of the URAA, the BAP rejected this argument and held that "the name or identity of the person acknowledging the mortgage was omitted from the notary's certificate of acknowledgment [and] [u]nder the Kentucky acknowledgment and notice statutes ... the certificate of acknowledgment is defective." *Id.* at 537. Several bankruptcy courts applying Kentucky law have reached the same conclusion. *See Burden v. CIT Grp./Consumer Fin., Inc. (In re Armstrong),* 366 B.R. 716, 718–19 (Bankr.

E.D.Ky.2007) (holding that mortgage was defectively executed where certificate of acknowledgment stated that "[t]he foregoing instrument was acknowledged before me this 4th day of November, 2003[,]" but did not state the names of the individuals who signed the mortgage); *Baker v. CIT Grp./Consumer Fin., Inc. (In re Hastings),* 353 B.R. 513, 516–17 (Bankr. E.D.Ky.2006) (rejecting the argument that the use of the words "acknowledged before me" without identifying the person who was acknowledging the signature rendered the certificate valid); *Miller v. Raisor (In re Raisor),* No. 05–3041, 2006 WL 3885132, at *2 (Bankr.E.D.Ky. Mar.31, 2006) (same).

A bankruptcy decision from this district recently followed the Sixth Circuit and BAP in concluding that blank acknowledgments are defective under Ohio law even if they use the phrase "acknowledged before me." In *Burns,* two mortgages were at issue; one mortgage was the subject of a certificate of acknowledgment stating that "[t]he foregoing instrument was acknowledged before me this 21st of May, 2003 by . . . . . . . . . . . . . . . . . . . . . . ." and the other was the subject of a certificate of acknowledgment stating that "[t]he foregoing instrument was acknowledged before me this 25th August, 2004 by _____." In other words, both certificates of acknowledgment used the statutory form with the words "acknowledged before me" followed by the date, the word "by" and a blank space. *See Burns,* 435 B.R. at 505–06. The Chapter 7 trustee for the estates of the debtors/mortgagors sought, among other things, to avoid the mortgages under § 544(a)(3) based on the failure to identify the mortgagors in the certificates of acknowledgment. The trustee filed motions for summary judgment, and the respective mortgage servicers filed objections to those motions, contending that the URAA "effectively overruled the Supreme Court

of Ohio's decision in *Smith's Lessee* and the cases that rely upon it, at least as pertains to an acknowledgment clause in a mortgage with only one mortgagor[.]" *Id.* at 508–09. Recognizing as specious the argument that the use of the phrase "acknowledged before me" is sufficient in the context of a single mortgagor, *id.* at 513–14, Judge Humphrey rejected this argument, holding that *"Smith's Lessee* is still instructive and consistent with the URAA; *Smith's Lessee* is consistent with the statutory short form; and the URAA as previously interpreted and applied in this Circuit and District does not support [this] argument." *Id.* at 513.

In addition, an Ohio court of appeals has implicitly rejected the argument now being made by Huntington. *See Farrell,* 2010 WL 3852223, at *1, 4–6 (discussing the URAA while holding that a certificate of acknowledgment stating that "[t]his instrument was acknowledged before me this *18th* of *March,* 2004, by _____" did not substantially comply with § 5301.01 or the URAA because it was left blank). In *Farrell,* Michael Farrell signed a mortgage conveying an interest in his real property. The certificate of acknowledgment stated that " '[t]his instrument was acknowledged before me this 18th of March, 2004, by _____.' " *Id.* at *1. The trial court held that the blank caused the certificate of acknowledgment to be defective, rendering the mortgage improperly executed, not entitled to be recorded and lacking priority over a subsequent, and properly executed, mortgage. In its opinion in *Farrell,* the court of appeals cited § 5301.01(A), § 5301.25(A) and the provisions of the URAA examined above and discussed *Smith's Lessee, Dodd* and the substantial-compliance standard at length. After doing so, the court of appeals affirmed the decision of the trial court. In short, Huntington's argument based on the use of the phrase "acknowledged before me" has not been accepted in

any jurisdiction where the URAA has been adopted. Moreover, the Sixth Circuit, the BAP, multiple bankruptcy courts and an Ohio court of appeals all have rejected the argument. This Court does as well.

### 6. A Blank Acknowledgment Fails the Certification Requirement Even If It Appears on the Same Page as the Signature on the Mortgage.

Huntington also contends that, because Phalen's signature on the Short Form Mortgage appears on the same page as the Certificate of Acknowledgment, "a purchaser can determine from the document that the Debtor was the person executing and acknowledging the mortgage." Opp. Br. at 2. But there are at least three decisions—the BAP's decision in *Trujillo*, 378 B.R. at 529–30, and the bankruptcy court decisions in *Doubov*, 423 B.R. at 508 ("The debtors' signatures and the notary acknowledgment appear on page 8[.]") and *Wahl*, 407 B.R. at 886, in which the blank acknowledgments appeared on the same page as the signatures on the mortgages and yet the courts nonetheless held that the mortgages were not properly executed.[12]

Indeed, *Wahl* is on all fours with this adversary proceeding. In *Wahl*, the page on which the borrowers, Mariana A. Leppert–Wahl and David W. Wahl, Jr., signed the mortgage was the same page on which

the certificate of acknowledgment appeared. As here, the certificate of acknowledgment in *Wahl* included the typewritten name of only one borrower and failed to make any reference to the other. *See Wahl*, 407 B.R. at 886 ("[T]he acknowledgment clause of the notary public specifically references Ms. Wahl in typed print, but not Mr. Wahl."). The trustee argued that naming only one debtor in the acknowledgment clause did not evidence that the other debtor acknowledged before a notary that he executed the mortgage. Relying on *Smith's Lessee* and cases following it, the court found "no compelling evidence within the acknowledgment clause establishing that the notary acknowledged Mr. Wahl's signature." *Id.* at 890. "While Ms. Wahl's name is typed out in the acknowledgment clause, Mr. Wahl's name is omitted and there is nothing else in the language of the acknowledgment clause ... indicating the notary's intent to acknowledge [his] signature." Because of this omission, the court was unable to find that the notary certified Mr. Wahl's signature. *Id.* Thus, the mortgage was defectively executed and not entitled to be recorded. *Id.* at 891 ("[A] defectively executed mortgage is treated as unrecorded under Ohio law and, therefore, the Trustee as a matter of law cannot have constructive or inquiry notice of the Mortgage as to Mr. Wahl's interest in the property.").

---

12. *Smith's Lessee* also may be contrary to Huntington's same-page argument. The 1831 Statute at issue in *Smith's Lessee* required the public official to "certify such acknowledgment *on the same sheet* on which such deed, mortgage, or other instrument of writing, may be printed or written[.]" 3 Curwen's Rev. Stat. 2449 (emphasis added). Mortgages apparently easily satisfied the same-page requirement at the time the mortgage in *Smith's Lessee* was executed. *See Kresge Co.*, 23 N.E.2d at 946 ("When the provision now found in Section 8510, General Code [*i.e.*, the 1831 Statute], was enacted, more than a hun-

dred years ago, deeds, mortgages and leases were usually and could easily be written in their entirety on a single sheet of paper."). And the party challenging the mortgage in *Smith's Lessee* stated that "[t]he only defect in the acknowledgment is the omission of the grantor's name," *Smith's Lessee*, 13 Ohio at 262, apparently saying nothing about the location of the certificate. Thus, although it is impossible to know for certain, it is likely that the certificate of acknowledgment at issue in *Smith's Lessee* appeared on the same page as the mortgage.

The Certificate of Acknowledgment here is in substance no different than those in *Doubov, Trujillo* and *Wahl.* The form includes only one typewritten name in the acknowledgment—that of Buxton— and Phalen's name is not contained anywhere in the Certificate of Acknowledgment. Despite this fact, Huntington contends that a "purchaser can determine from the document that [Phalen] was the person executing and acknowledging the mortgage." Opp'n Br. at 2. And as the creditors in *Trujillo* argued, Huntington attempts to construe use of the phrase "acknowledged before me" to mean that the "reasonable conclusion to be reached is that if there is no dispute that the mortgagors signed the instrument and the words 'acknowledged before me' are contained in the acknowledgment, the dots are connected, identification has been made and there is no execution issue." Opp'n Br. at 9. For the reasons discussed above, this argument is not persuasive. And the argument fares no better when the signatures of the mortgagors and the certificate of acknowledgment appear on the same page because when only one of two borrowers is identified in the certificate of acknowledgment, the Court and subsequent purchasers cannot determine whether the other borrower acknowledged his or her signature before the notary, signed the instrument at a different time or, for that matter, actually signed the mortgage at all. The conclusion posited by Huntington is therefore anything but reasonable. Indeed, the most natural reading of the Certificate of Acknowledgment is that Phalen did not acknowledge his signature before the notary public.

### 7. Conclusion.

■ In sum, Huntington has failed to articulate any basis that would convince the Court to depart from the well-settled case law in Ohio and this Circuit holding that the failure to name or otherwise identify the mortgagor in a certificate of acknowledgment causes the mortgage to be defectively executed and does not provide constructive notice to a bona fide purchaser. Of course, "[n]o federal court has the final say on what Ohio law means." *Ohio ex rel. Skaggs v. Brunner,* 549 F.3d 468, 472 (6th Cir.2008). But unless Huntington or another party were to appeal a state-court decision such as *Farrell* to the Ohio Supreme Court and receive a ruling overturning the rule of law announced in *Smith's Lessee,* the Court anticipates that the analysis provided here and the analysis already provided by so many other courts, as well as the duties imposed by Rule 9011 of the Federal Rules of Bankruptcy Procedure, will put a halt to the practice of lenders and their counsel pressing legal theories in blank-acknowledgment adversary proceedings that, quite simply, are indefensible under existing law.

### E. The Master Mortgage Does Not Provide the Trustee with Constructive Notice.

■ Huntington's argument that it does not matter whether Phalen's Mortgage is defectively executed because the recording of the Master Mortgage provides the Trustee with constructive notice of Phalen's Mortgage fares no better.[13]

---

13. The copy of the Master Mortgage attached to the Response is not certified or acknowledged, which would make it self-authenticating under Federal Rule of Evidence 902, nor does it fall within any of the other categories of self-authenticating documents under that rule. Despite this, Huntington attached the Master Mortgage as Exhibit 1 to its brief in opposition without filing an authenticating affidavit or declaration and thus did not place the contents of the Master Mortgage into evidence. The Trustee has objected to the admission of the contents of the Master Mortgage for purpose of summary judgment. *See* Reply at 14 n.2. If consideration of the con-

Neither the contents of the Master Mortgage nor the fact that it was recorded supports Huntington's contention that the Master Mortgage provided the Trustee with constructive notice of Phalen's Mortgage. Nothing in the provisions of the Ohio Revised Code governing master mortgages leads the Court to conclude that the Ohio legislature intended those provisions to eliminate the Certification Requirement. The Ohio Revised Code provides as follows with respect to master mortgages:

> An instrument containing a form or forms of covenants, conditions, obligations, powers, and other clauses of a mortgage, may be recorded in the record of mortgages of any county. Every such instrument shall be entitled "Master Mortgage Form Recorded By (name of the person causing the instrument to be recorded)" and shall be dated and signed by the person causing it to be recorded, but need not be acknowledged. Upon presentation for record and payment of the fees provided in section 317.32 of the [Ohio] Revised Code, the county recorder shall record any such master mortgage form in the record of mortgages of the county and shall index it in the general alphabetical index of grantees under the name appearing in the title, in the same manner as mortgages of real property.

Ohio Rev.Code Ann. § 5302.15 (West 2010).

> The provisions of a master mortgage form recorded pursuant to section 5302.15 of the [Ohio] Revised Code may be incorporated by reference in any mortgage of real property situated in the county where such master mortgage form is recorded, by stating in such mortgage the volume and page number of the record of mortgages where such master mortgage form is recorded, and, if only a part of such master mortgage form is to be incorporated in the mortgage, the part or parts to be excluded. A copy of such master mortgage form shall be furnished to the mortgagors prior to the execution of the mortgage, and receipt thereof shall be noted in such mortgage.
>
> Any part or all of a master mortgage form incorporated by reference pursuant to this section in a mortgage of real property is a part of such mortgage the same as if fully rewritten therein, and need not be recorded with such mortgage to be effective.

Ohio Rev.Code Ann. § 5302.16 (West 2010).

Under § 5302.15, the Master Mortgage is a form document that other individual mortgages recorded in the same county—in this instance, Franklin County, Ohio—may incorporate in whole or in part by reference, thereby making the portion of the Master Mortgage so incorporated a part of the underlying mortgage. Being a form document, the Master Mortgage does

---

tents of the Master Mortgage were required in order for Huntington to prevail, the Court would be unable to consider those contents given Huntington's failure to provide an authenticating affidavit or declaration. *See Sauer*, 417 B.R. at 540; *Roberts v. Oliver (In re Oliver)*, No. 08–3129, 2009 WL 2996306, at *1 (Bankr.E.D.Tenn. June 22, 2009) ("Because the Quit Claim Deed attached to the Limited Motion to Reconsider is not certified, it is not self-authenticating, [and] is not admissible for purposes of summary judg-

ment....."). The only facts in the summary judgment record pertaining to the Master Mortgage are in evidence because the Trustee attached the Short Form Mortgage to a pleading (the Complaint). Those facts are that the Short Form Mortgage states that it incorporates the Master Mortgage by reference, at least in part, and that the Master Mortgage was recorded with the Recorder on January 3, 2008, before the execution and recording of the Short Form Mortgage.

not reference any of the underlying mortgages and bears neither the signatures of the mortgagors nor those of the notaries public who certified the mortgagors' acknowledgment of their signatures on the underlying mortgages. To be clear, the Master Mortgage does not reference the Short Form Mortgage; indeed, the Master Mortgage was recorded nearly a year before Phalen and Buxton executed the Short Form Mortgage. In addition to failing to reference the Short Form Mortgage, the Master Mortgage does not contain the signatures of Phalen or the notary public. Nor does it not contain evidence of Phalen's acknowledgment of the Short Form Mortgage or include the notary public's certification of Phalen's acknowledgment.

The Court predicts that the Ohio Supreme Court, if asked to decide the question,[14] would conclude that the filing of the Master Mortgage failed to provide the Trustee with constructive notice of Phalen's Mortgage. First, although a master mortgage itself need not be acknowledged, see § 5302.15, there is nothing in § 5302.15 or § 5302.16 that purports to eliminate the four requirements for the proper execution of a mortgage imposed by § 5301.01 with respect to the underlying mortgage that incorporates a master mortgage by reference. Nor do those sections purport to eliminate the effect of § 5301.25(A) with respect to deficiently executed mortgages, which is that such mortgages are not entitled to be recorded and thus fail to provide constructive notice to bona fide purchasers. See Ohio Rev.Code Ann. § 5301.25(A). If Huntington's position were accepted, however, the result would be that a mortgagor could fail to acknowl-

edge his or her signature on a mortgage—and a notary public could fail to certify any acknowledgment the mortgagor happens to make—and the mortgage would still be enforceable against bona fide purchasers. Such a result would effectively read §§ 5301.01 and 5301.25 out of the Ohio Revised Code with respect to mortgages merely because they incorporate a properly recorded master mortgage by reference. The Court simply cannot find that the Ohio legislature intended, in enacting §§ 5302.15 and 5302.16 effective November 1967, to repeal by implication the long-standing principles of real-estate law reflected in §§ 5301.01 and 5301.25, and the Court concludes that the Ohio Supreme Court would not so hold if it were asked to decide the issue.

In support of its assertion that the Master Mortgage provides the Trustee with constructive notice of Phalen's Mortgage, Huntington points to two decisions rendered by the Ohio Supreme Court. Huntington's reliance on these inapposite decisions, however, is misplaced. In *Blake v. Graham*, 6 Ohio St. 580, 583 (1856), the Ohio Supreme Court held, in a case where the plaintiffs had acquired their interests in real property from one source and the defendants had acquired their interests in the same property from another, that the interests in the real property held by the defendants had priority because they would not have discovered the other interests when conducting a title search. Perhaps Huntington's argument is that the Trustee would have discovered the Master Mortgage if she had done a title search. But it does not help Huntington that a title searcher might have found the Master

---

**14.** The Court is aware of no decisions from Ohio or other jurisdictions—Huntington has not cited any and the Court's independent research has found none—addressing the issue of whether the recording of a master mortgage would provide a trustee with con-

structive notice of an underlying mortgage. Again, because the Ohio Supreme Court has not yet addressed this issue, the Court's role is to "ascertain how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co.*, 197 F.3d at 1181.

Mortgage if he or she had searched the Recorder's records. As the Sixth Circuit has held, "[i]f [a title search were] done, such a search would foreclose subsequent parties in interest, as actual notice of the security interest would be obtained from the county's books." *Vance*, 99 Fed.Appx. at 28. "However, the 'strong arm' provision of federal bankruptcy law specifically prohibits trustees from having actual knowledge of the interest. Thus, the trustee can only be charged with constructive notice." *Id.* The other decision on which Huntington relies is *Arnoff v. Williams*, 94 Ohio St. 145, 113 N.E. 661 (1916), in which the Ohio Supreme Court stated as follows: "[R]eference to the agreements was sufficient to put the grantees upon inquiry [notice].... While it is true that no restrictions are mentioned in the deed ... the agreements [imposing the restrictions] were by reference incorporated in several deeds in his chain of title...." *Arnoff*, 113 N.E. at 663. Arnoff is inapposite here because the Master Mortgage does not mention, let alone incorporate by reference, the Short Form Mortgage and, therefore, could not have placed the Trustee on constructive notice of Phalen's Mortgage. For these reasons, the Court concludes that the filing of the Master Mortgage does not provide the Trustee with constructive notice of Phalen's Mortgage.

## F. Section 5301.25 Applies to Mortgages.

■ As an alternative argument, Huntington contends that it is immaterial whether Phalen's Mortgage is defectively executed and thus ineffective to provide constructive notice to a subsequent bona fide purchaser under § 5301.25(A) because § 5301.25(A) does not apply to mortgages. Noting the language in § 5301.25(A) that "instruments of writing properly executed ... other than as provided in division (C) of this section and section 5301.23 of the

[Ohio] Revised Code, shall be recorded[,]" Ohio Rev.Code Ann. § 5301.25(A), Huntington argues that only § 5301.23(A) of the Ohio Revised Code applies to mortgages. Opp'n Br. at 11. Section 5301.23(A) of the Ohio Revised Code states:

All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.

Ohio Rev.Code Ann. § 5301.23(A).

Huntington's position is wrong for several reasons. First, by its express terms, § 5301.23(A) applies only to "properly executed mortgages" and, as explained above, Phalen's Mortgage was not properly executed. In *Strang*, the Ohio Supreme Court construed a precursor to § 5301.23(A) that provided that "all mortgages executed *agreeably to the provisions of this act*, shall be recorded in the office of the recorder of the county in which such mortgaged premises are situated, and *shall take effect from the time when the same are recorded* [.]" *Strang*, 11 Ohio St. at 288 (internal quotation marks omitted). The Ohio Supreme Court noted that this statutory provision and a later version of it were the subject of a "series of authoritative decisions ... holding that such mortgages only as were signed, sealed, witnessed and acknowledged in accordance with the provisions of the [statutes] were entitled to be recorded, or could be recognized as having been delivered for record or recorded[.]" *Id.* The Ohio Supreme Court also stated that "none but mortgag-

es so executed *and* delivered for record, or recorded, could have any effect whatsoever, either at law or in equity, as to third parties...." *Id.* Under the Ohio Supreme Court's decision in *Strang,* therefore, Huntington's argument would have been rejected under the predecessor to § 5301.23(A) as far back as 1860. Once again, Huntington's position is contrary to long-established Ohio law.

Huntington's argument also is contrary to more recent decisions of the Ohio Supreme Court and lower Ohio courts decided in the context of § 5301.25(A) itself and also is inconsistent with decisions of the Sixth Circuit, the BAP and other bankruptcy courts, all of which have held that § 5301.25(A) applies to mortgages. The Ohio Supreme Court held that § 5301.25(A) applies to mortgages in *Citizens National Bank in Zanesville v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329 (1956) when it stated that "[a] mortgage ... is not properly executed in accordance with the provisions of Section 5301.01, Revised Code, and is not entitled to record under Section 5301.25, Revised Code, and the recording thereof does not constitute constructive notice to subsequent mortgagees, where there is a failure to follow the statutory requirements...." *Denison,* 133 N.E.2d at 330 (syllabus ¶ 2). Although it is venerable authority and was superseded by statute at one time,[15] "*Denison* remains good law...." *Sauer,* 417 B.R. at 528 n. 1 (citing *Field v. Wheeler (In re Wheeler),* 2006 WL 1645214, at *3 n. 2 (S.D.Ohio June 12, 2006) in which that district court concluded that "*Denison* [wa]s still good law in Ohio"). The Ohio Supreme Court recently reiterated the holding of *Denison. See Nowak,* 820

N.E.2d at 338 (citing *Denison* and § 5301.25 for the proposition that "[a]s a matter of Ohio law, a bona fide purchaser of real property cannot be charged with constructive knowledge of a prior unrecorded mortgage"). Lower Ohio courts have followed *Denison* in applying § 5301.25 to mortgages. *See Farrell,* 2010 WL 3852223, at *7 ("A defectively executed mortgage is not entitled to record. [Ohio Revised Code § ] 5301.25; *[Denison], supra* ... The Ohio Supreme Court further limited the effectiveness of a defectively recorded mortgage to hold in *[Denison], supra,* that under [Ohio Revised Code § ] 5301.25, the recording of a defectively executed mortgage does not establish a lien with priority over subsequently recorded mortgages properly executed...."). Consistent with *Denison,* the Sixth Circuit, the BAP and another bankruptcy court in this district also have applied § 5301.25 to mortgages. *See Zaptocky,* 250 F.3d at 1028 ("Ohio law provide[s] that an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice."); *Bavely v. Huntington Nat'l Bank (In re Cowan),* 273 B.R. 98, 102 (6th Cir. BAP 2002) ("If land is governed by the traditional system, a properly executed mortgage must be filed with the appropriate county recorder's office in order to create a perfected interest in the property." (citing both Ohio Revised Code §§ 5301.23 and 5301.25), *aff'd,* 70 Fed.Appx. 797 (6th Cir. 2003) (unpublished)); *Burns,* 435 B.R. at 508 n. 5 (rejecting argument that § 5301.25(A) does not apply to mortgages).

---

**15.** *Denison* was not superseded during the time that the Debtors signed the Short Form Mortgage in 2008. *See Sauer,* 417 B.R. at 528 n. 1 (noting that *"Denison* was superseded by Ohio Rev.Code § 5301.234 ... which was in effect in Ohio for about three years from 1999 to 2002, [and which] established a rebuttable presumption that any mortgage which was properly recorded was properly executed[,]" but that "[t]he Ohio General Assembly ... repealed § 5301.234").

The reason these courts have applied § 5301.25 to mortgages is that doing so is, unlike Huntington's argument, consistent with Ohio's statutory framework. In plain language, Ohio Revised Code § 5301.25(A) states that "[a]ll deeds, land contracts ..., and *instruments of writing properly executed for the conveyance or encumbrance of lands,* tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the [Ohio] Revised Code, shall be recorded...." Ohio Rev.Code Ann. § 5301.25(A) (emphasis added). A mortgage clearly is an instrument of writing executed for the conveyance or encumbrance of land. And the consequence of such an instrument's not being recorded (or not being properly executed and thus not entitled to be recorded) also is clear: "[u]ntil so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument." *Id.*

■■■ Huntington contends that mortgages are exempt from this statutory provision based on the language "other than as provided in ... section 5301.23 of the [Ohio] Revised Code...." *id.,* referring to a section governing the effective date of mortgages and providing that "[a]ll properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record." Ohio Rev.Code Ann. § 5301.23(A). Section 5301.23 of the Ohio Revised Code "sets forth the general rule that the first mortgage that is presented and recorded has preference over a subsequently presented and recorded mortgage." *Washington Mut. Bank, FA v. Aultman,* 172 Ohio App.3d 584, 876 N.E.2d 617, 622 (2007). It is a "race" statute with respect to the effect of recording properly executed mortgages; under such a statute,

the test for which properly executed mortgage has priority is solely a chronological one—the first recorded properly executed mortgage has priority regardless of any actual or constructive notice or knowledge the holder of that mortgage has of a preexisting but unrecorded mortgage. *See Terlecky v. Am. Cmty. Bank (In re Godwin),* 217 B.R. 540, 543 (Bankr.S.D.Ohio 1997) (Ohio Revised Code § 5301.23 "is analogous to North Carolina law which has been called a 'pure race' statute, meaning that the one who wins the race to the Register of Deeds' Office will have priority."); *see also Remes v. McGee (In re McGee),* 196 B.R. 78, 82 n. 5 (Bankr.W.D.Mich.1996) ("In a 'race' or 'pure race' jurisdiction, 'the first to record regardless of notice of an unrecorded deed earlier in time has the better rights.' Black's Law Dictionary 1275 (6th ed. 1990). While 'race' statutes are rare in the U.S., North Carolina and Louisiana are 'race' jurisdictions. In addition, Delaware's mortgage recording statute is a 'race' statute." (citation omitted)).

As explained above, however, § 5301.25(A) also applies to mortgages. And Ohio Revised Code §§ 5301.23 and 5301.25(A) must be construed in tandem, not separately as urged by Huntington. *See Vickroy v. Vickroy,* 44 Ohio App.3d 210, 542 N.E.2d 700, 700 (1988) (applying both § 5301.23 and § 5301.25(A) in holding that "an unrecorded mortgage is ineffective to defeat the interest of a subsequent bona fide purchaser" (syllabus ¶ 1)). Rather than reading § 5301.23 as excluding mortgages from § 5301.25(A), the language in the text stating "other than as provided in ... § 5301.23 of the Revised Code" provides a rule for determining the priority of properly executed mortgages against one another (with the first-recorded properly executed mortgage having priority), whereas § 5301.25(A) applies in the context of a priority dispute between the holder of a mortgage and a subsequent

bona fide purchaser (with, among other things, an improperly executed mortgage losing to a subsequent bona fide purchaser such as the Trustee). Thus, based on the language of the statute and the well-settled case law at all levels in Ohio, the Court concludes that Ohio Revised Code § 5301.25 does indeed apply to mortgages.

In support of its argument, Huntington quotes—without any explanation or analysis—from a secondary source, stating: " '[Ohio Revised Code § ] 5301.25 applies to deeds, executory land contracts executed after September 29, 1961 and not to be fully performed within one year, and all other instruments (except mortgages). . . .' " Opp'n Br. at 4–5 (quoting Robert L. Hausser, *Ohio Real Estate Law and Practice* § 5.051(A) (2d ed. West 1993)). Huntington's use of this quote illustrates the perils of selectively quoting language from a passage in an attempt to support an untenable position. In the section of the treatise immediately following the section quoted by Huntington, the author makes clear that in enacting § 5301.23 "Ohio has adopted the 'race' type recording statute for mortgages . . . which makes the date and time of recording the sole test of priority as between common mortgagees . . . from a fraudulent mortgagor. . . ." *See* Hausser, *supra*, § 5.051(B). There is nothing inconsistent with that view and the view that § 5301.25 applies to mortgages when the priority dispute is between a mortgagee and a subsequent bona fide purchaser.

## G. The Trustee Is Not Entitled to Summary Judgment on the Preference Cause of Action.

The Trustee also seeks to avoid the transfer of Phalen's one-half interest in the Property to Huntington as a preferential transfer under § 547(b). To avoid a transfer as a preference, § 547(b) requires that a trustee establish the following:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The Trustee bears the burden of proving each of these requirements. *See* 11 U.S.C. § 547(g). In order to prevail on her preferential-transfer claim, therefore, the Trustee must demonstrate, among other things, that the transfer she is seeking to avoid was "for or on account of an antecedent debt owed by the debtor before such transfer was made[.]" 11 U.S.C. § 547(b)(2). Thus, whether or not the Transfer was for or on account of an antecedent debt is material. In its Answer, Huntington specifically denies that the transfer of Phalen's interest in the Property to Huntington ("Transfer") was for or on account of an antecedent debt

owed by Phalen before the Transfer was made. *See* Answer at ¶¶ 2 & 4. And, based on the record, whether or not the Transfer was for or on account of an antecedent debt owed by Phalen appears to be a genuine dispute at this point. The antecedent debt, if any, would be the debt arising under the promissory note dated December 3, 2008 ("Promissory Note"). Because Phalen's Mortgage is defectively executed and thus unperfected, the Transfer is deemed to have occurred immediately before the Petition Date of October 22, 2009. *See* 11 U.S.C. § 547(e)(2)(C) ("For the purposes of this section ... a transfer is made—... immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—(i) the commencement of the case; or (ii) 30 days after such transfer takes effect between the transferor and the transferee."). Thus, the debt arising by virtue of the Promissory Note is antecedent to the Transfer, possibly satisfying the antecedent-debt requirement *with respect to someone*. The Promissory Note, however, is not in the record; it is possible that Phalen did not sign it. If Phalen did not sign the Promissory Note, then the Transfer arguably did not occur for or on account of an antecedent debt *owed by Phalen to Huntington*. For this reason, there is a genuine issue of material fact regarding whether the Transfer was for or on account of an antecedent debt owed by Phalen before the Transfer was made, and the Trustee is not entitled to summary judgment on her request to avoid Phalen's Mortgage pursuant to § 547(b).

## H. The Trustee Has Not Demonstrated the Need for Recovery Under § 550.

██ In Count Five of the Complaint the Trustee seeks "recover[y] [of] the Property, or [the] value thereof, from Huntington, pursuant to 11 U.S.C. § 550[.]" Compl. at 5. Such relief is not appropriate here if avoidance of Phalen's Mortgage alone is a sufficient remedy. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir.2003) ("[W]hen the avoidance alone is a sufficient remedy, there is no need for the trustee to seek recovery."); *Rodriguez v. Daimlerchrysler Fin. Servs., Americas LLC (In re Bremer)*, 408 B.R. 355, 359–60 (10th Cir. BAP 2009) ("[I]f the avoidance and preservation constitute a sufficient remedy, then the trustee need not seek recovery under § 550(a), nor must the bankruptcy court grant it. As Judge Norton's authoritative treatise notes, '[a]n example of avoidance alone being [sufficient] is when the trustee successfully avoids a lien[.]' Other courts agree with Judge Norton and view the avoidance of a lien as sufficient to recover the transferred property, reasoning that when a lien is avoided, there is nothing left to recover." (footnote omitted)), *aff'd sub nom. Rodriguez v. Drive Fin. Servs., L.P. (In re Trout)*, 609 F.3d 1106 (10th Cir. 2010); *Schnittjer v. Linn Area Credit Union (In re Sickels)*, 392 B.R. 423, 427 (Bankr.N.D.Iowa 2008) ("Avoidance of the lien [and preservation for the benefit of the estate] constitutes a complete recovery for the bankruptcy estate.... [T]he Court concludes that ... Trustee is not entitled to a monetary judgment under § 550(a).").

In the context of an adversary proceeding by a Chapter 7 trustee to avoid a transfer of the debtor's interest in real property via quitclaim deed, another bankruptcy court has held that the trustee was entitled to recover from the defendant because in that case the trustee's sale of the property (which had not yet occurred) would not fully compensate the estate. *See Slone v. Lassiter (In re Grove–Merritt)*, 406 B.R. 778, 812 (Bankr.S.D.Ohio 2009) ("Merely setting aside the [transfer], more than three years after the date it occurred and placing the burden on the Trustee to sell the Property in the midst of a downturn in the real estate market that

occurred after the [transfer] would not restore the bankruptcy estate to where it would have been had the [transfer] not taken place."). But here, as noted above, the Trustee already has sold the Property. And the Trustee has not explained why recovery under § 550(a) is necessary or appropriate in light of the preservation of Phalen's Mortgage for the benefit of Phalen's estate and the attachment of Phalen's Mortgage to the proceeds of the Trustee's sale of the Property. The Court therefore denies the Trustee's request for summary judgment on Count Five of the Complaint.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion in part and **DENIES** it in part. The Court **GRANTS** summary judgment on Count Two of the Complaint seeking to avoid Phalen's Mortgage under § 544(a)(3) and on Count Four of the Complaint seeking to preserve the lien represented by that mortgage for the benefit of Phalen's estate under § 551. Given the state of the record and the genuine issue of material fact regarding whether the transfer to Huntington by Phalen was made for or on account of an antecedent debt owed by Phalen to Huntington, the Court **DENIES** summary judgment on Count Three of the Complaint. The Court also **DENIES** summary judgment on Count One of the Complaint (a declaratory judgment that Phalen's one-half interest in the Property is unencumbered) on the basis of mootness. Finally, the Trustee has failed to establish that a claim for recovery under 11 U.S.C. § 550 is necessary in light of the preservation of Phalen's Mortgage for the benefit of his estate and the attachment of the lien to the sale proceeds being held by the Trustee; therefore, summary judgment on Count Five of the Complaint also is **DENIED.** The Court will enter a separate judgment entry in accordance with this memorandum opinion on Count Two and Count Four. A status conference on the remaining counts will be scheduled by separate order of the Court.

**IT IS SO ORDERED.**